**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: January 22, 2025
Date Decided: February 7, 2025

Kevin J. Mangan, Esquire
Womble Bond Dickinson (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801

David E. Wilks, Esquire
D. Charles Vavala III, Esquire
Wilks Law LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805

RE: *Hartfield, Titus & Donnelly, LLC v. MarketAxess Holdings Inc.*,
C.A. No. 2023-0690-BWD

Dear Counsel:

This letter opinion resolves plaintiff Hartfield, Titus & Donnelly, LLC ("HTD") and defendant MarketAxess Holdings Inc.'s ("MKTX") cross-motions for summary judgment (the "Motions"). For the reasons that follow, the Motions are denied.

By way of background, on September 10, 2020, HTD and MKTX executed a Membership Interest Purchase Agreement ("MIPA") under which HTD agreed to sell, and MKTX agreed to purchase, MuniBrokers, LLC, a limited liability company that owns and operates an electronic trading platform called Munibrokers. Verified Compl. [hereinafter Compl.] ¶¶ 1–2, 18, Dkt. 1. As part of the transaction, HTD agreed to license Munibrokers from MKTX for at least five years pursuant to a

Software License Agreement. *Id.* ¶ 24. Under the Software License Agreement, HTD agreed to pay system license fees to MKTX based on the trade volume generated by HTD on Munibrokers. *Id.* ¶¶ 24, 29.

Under the MIPA, HTD was to receive a cash payment of $20 million (later amended to $17 million) at closing, with the possibility of additional earnout payments. *Id.* ¶ 24. The MIPA included five tiers of potential earnout payments based on the amount of system license fees generated by HTD and paid to MKTX during each annual earnout period, as follows:

> [if the system license fees] (i) are less than $2,500,000, an amount equal to $0; (ii) are equal to or greater than $2,500,000, but less than $2,750,000, an amount equal to $1,420,000; (iii) are equal to or greater than $2,750,000, but less than $3,000,000, an amount equal to $2,830,000; (iv) are equal to or greater than $3,000,000, but less than $3,250,000, an amount equal to $4,250,000; and (v) are equal to or greater than $3,250,000, an amount equal to $5,670,000.

*Id.*, Ex. 1 § 10.1.

In addition, the MIPA included a "Cash Top-Up Option," providing that if the amount of system license fees paid by HTD "is equal to or greater than $2,750,000, but less than $3,250,000," HTD could elect to pay MKTX an amount in cash to reach the highest tier earnout target of $3,250,000. *Id.* § 1.5(e).

The parties initially expected to close the transaction on March 31, 2021, but closing was delayed by nine days, to April 9, 2021. Compl. ¶ 35. To address the

impact of the delay on the earnout targets, the parties agreed to amend the MIPA

(the "Amendment") to prorate the system license fee targets by 356/365 for the first

earnout period:

> [if the system license fees] (i) are less than $2,438,356.16, an amount
> equal to $0; (ii) are equal to or greater than $2,438,356.16, but less than
> $2,682,191.78, an amount equal to $2,125,000; (iii) are equal to or
> greater than $2,682,191.78, but less than $2,926,027.40, an amount
> equal to $4,250,000; (iv) are equal to or greater than $2,926,027.40, but
> less than $3,169,863.01, an amount equal to $6,375,000; and (v) are
> equal to or greater than $3,169,863.01, an amount equal to
> $8,500,000[.]

*Id.* ¶¶ 34–38; *id.*, Ex. 2 § 1(q)(a). Although the Amendment prorated the earnout

targets, it did not similarly revise the Cash Top-Up Option for the first earnout

period. *Id.* ¶ 39.

HTD generated $2,740,394 in system license fees in the first earnout period,

missing the $2,750,000 Cash Top-Up Option threshold by less than $10,000. *Id.*

¶ 55.

On July 6, 2023, HTD initiated this action through the filing of a Verified

Complaint (the "Complaint"). The Complaint alleges that the parties agreed to

"prorate all target thresholds for the first year [e]arnout calculation period,"

including the Cash Top-Up Option. *Id.* ¶ 91. Specifically, the Complaint alleges

that the parties reached a specific prior agreement to amend the Cash Top-Up Option

to reflect that if the amount of system license fees paid by HTD "is equal to or greater than $2,682,191.78, but less than $3,169,863.01," HTD could elect to pay MKTX an amount in cash to reach $3,169,863.01. *Id.* ¶ 47. The Complaint brings a claim to reform the Cash Top-Up Option for the first earnout period under the MIPA based on theories of unilateral and mutual mistake, as well as claims for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 90–115.

The parties have cross-moved for summary judgment under Court of Chancery Rule 56.[1] A five-day trial is scheduled to begin on March 31, 2025.

Summary judgment will be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ct. Ch. R. 56(c). "When the Court is faced with cross-motions for summary judgment[,] the same standard must be applied to each of the parties' motions and the mere existence of cross-motions does not necessarily indicate that summary

---

[1] On December 4, 2024, MKTX filed its Opening Brief in Support of Motion for Summary Judgment. Dkt. 94 [hereinafter Def. OB]. The same day, HTD filed its Opening Brief in Support of Its Motion for Summary Judgment. Dkt. 97 [hereinafter Pl. OB]. On January 3, 2025, HTD filed its Brief in Opposition to Defendant's Motion for Summary Judgment, Dkt. 104 [hereinafter Pl. AB], and MKTX filed its Brief in Opposition to Plaintiff's Motion for Summary Judgment. Dkt. 105 [hereinafter Def. AB]. On January 21, 2025, MKTX filed its Reply Brief in Further Support of Its Motion for Summary Judgment. Dkt. 110 [hereinafter Def. RB]. The next day, HTD filed its Reply Brief in Support of Its Motion for Summary Judgment. Dkt. 111 [hereinafter Pl. RB].

judgment is appropriate for one of the parties." *Baring v. Condrell*, 2004 WL 2340047, at \*3 (Del. Ch. Oct. 18, 2004). "Thus[,] when presented with cross-motions for summary judgment a movant will be granted relief only if the Court determines that the record does not require a more thorough development to clarify the law or its application to the case." *Id.*

Upon careful review of the more than 300 pages of briefing and several dozen exhibits submitted in support of the Motions, it is apparent that the Motions implicate fact questions that will be resolved most efficiently on a more thoroughly developed record after trial. *See In re XL Fleet (Pivotal) S'holder Litig.*, 2024 WL 3888738, at \*1 (Del. Ch. Aug. 21, 2024) (denying leave to brief motions for summary judgment, which "require a court to dive deeply into a paper record without the benefit of live witnesses explaining the significance of that record" and involve "a substantial investment of judicial resources[,]" where "trial and the attendant benefits of live witness testimony [were] around the corner"); *see also* Dkt. 91 at 5:4–5. ("My experience is summary judgment is rarely productive in equity.").[2]

---

[2] "[T]here is no [] absolute right to summary judgment, and it is within the discretion of the presiding judicial officer to require a developed record before rendering a decision on the merits." *Gerald N. & Myrna M. Smernoff Rev. Trs. v. King's Grant Condo. Ass'n.*, 2022 WL 6331860, at \*1 (Del. Ch. Oct. 10, 2022) (footnote omitted). "Even where the facts are not in dispute, a court may decline to grant summary judgment where a more thorough exploration of the facts is needed to properly apply the law to the circumstances." *In re Tri-Star Pictures, Inc., Litig.*, 1995 WL 106520, at \*5 (Del. Ch. Mar. 9, 1995); *see*

Most notably, there remains a genuine issue of material fact as to whether MKTX and HTD reached a specific prior understanding to prorate the Cash Top-Up Option for the first earnout period, the resolution of which must await trial. Whether HTD relies on unilateral or mutual mistake to support its reformation claim, it "must show by clear and convincing evidence that the parties came to a specific prior understanding that differed materially from the written agreement." *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151–52 (Del. 2002). HTD, on one hand, cites documentary and other evidence to support its position that in the course of negotiations, the parties "reached a specific prior contractual understanding to ministerially prorate all targets[,]" while MKTX, for its part, cites testimony from HTD's former outside counsel, MKTX executives, and others purportedly demonstrating the opposite.[3] Pl. AB at 38–50; Def. OB at 28–30. Given the conflicting evidence, it is not only beneficial, but necessary, to inquire into the facts

---

*also In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 2014 WL 2768782, at *9 (Del. Ch. June 12, 2014) ("[T]he court may, in its discretion, deny summary judgment if it decides upon a preliminary examination of the facts presented that it is desirable to inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application.").

[3] HTD challenges the credibility of that testimony, but such determinations must be resolved at trial. Pl. OB at 36–38; Pl. AB at 42–43. *See, e.g.*, *Cerberus Int'l, Ltd.*, 794 A.2d at 1150 ("If the matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate.").

more thoroughly at trial—now less than two months away—before resolving this issue.[4]

Accordingly, the Motions are DENIED.  The parties might consider forgoing pre-trial briefs given the extensive briefing that was submitted on the Motions.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:     All counsel of record (by File & ServeXpress)

---

[4] MKTX alternatively argues that "HTD's breach of contract claim [still] fails" because HTD did not timely exercise the Cash Top-Up Option in the manner required by the MIPA. Def. OB at 37–38.  HTD responds that MKTX repudiated the parties' "true" agreement, making it futile to exercise the option.  Pl. AB at 61–62.  Before resolving these arguments, the Court must first determine, post-trial, whether the parties agreed to prorate the Cash Top-Up Option for the first earnout period.  MKTX also argues that the Court should enter summary judgment on HTD's claim for breach of the implied covenant of good faith and fair dealing, but no efficiencies are gained from such a ruling at this stage.  Def. OB at 40–42.